**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN THE MATTER OF DANOS DEEPWATER, L.L.C. AS OWNER OF THE OLIVIA RAE AND REC MARINE LOGISTICS, LLC, GULF OFFSHORE LOGISTICS, LLC AND GOL, LLC AS ALLEGED OWNER *PRO HAC VICE* AND OPERATOR OF THE OLIVIA RAE, FOR EXONERATION FROM OR LIMITATION OF LIABILITY** | **CIVIL ACTION NO. 19-CV-13626 c/w 20-1161**<br><br>**DISTRICT JUDGE: MARY ANN LEMMON**<br><br>**MAGISTRATE JUDGE: DANA DOUGLAS** |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE PETITIONERS' LIABILITY EXPERT**

MAY IT PLEASE THE COURT:

Claimant, Leon Freeman, respectfully moves this Court to exclude testimony from Petitioners Rec Marine Logistics, LLC, Danos Deepwater, LLC, Gulf Offshore Logistics, LLC and GOL, LLC's liability expert (Collectively referred to as "Vessel Petitioners"), Marc A. Fazioli. Claimant suffered an accident when the unsecured gangway he was walking on gave way and dumped him into the water causing injuries to his knee, back, and shoulders.

Vessel Petitioners submitted an expert report from Marc Fazioli purporting to show that neither the Vessel Defendants, the M/V OLIVIA RAE, nor her Master and Crew, violated any regulations or requirements or apparently owed any duty regarding the February 28, 2019 incident with Leon Freeman. Incredibly, Mr. Fazioli reached this conclusion despite the fact that one of the Vessel Petitioners admitted in their Interrogatory Response No. 17 that "**As operator of the vessel REC was responsible for the gangway**". Mr. Fazioli then went on to speculate without any actual factual support or scientific methodology regarding the causes of the Claimant s' accident, which he naturally blamed on the Claimant and Claimant's employer,

completely ignoring the fact that the REC crew was responsible for and actually placed the gangway in an unsecured position prior to the accident.

Marc Fazioli's expert report fails to utilize any reliable methodology to reach both factual and legal conclusions regarding the accident. Claimant submits that the facts at issue in this litigation, namely why and how an unsecured simple gangway fell as Claimant was walking across it, requires no specialized knowledge or experience or expert testimony of any sort for the Court to understand. Mr. Fazioli's unsupported opinions in this case establish that he is merely advancing arguments for the vessel interests and serving as an advocate rather than an expert. As such, Fazioli's testimony should be excluded at the trial as it is unnecessary, unsupported by any actual facts, and an invasion of this Court's legal and factual decision-making authority.

**Background**

On February 28, 2019, Mr. Freeman was working for Hydrochem cleaning tanks on M/V Olivia Rae, a vessel owned and operated by the Vessel Petitioners. As Mr. Freeman attempted to disembark from the M/V Olivia Rae onto the adjacent barge, the gangway between the two vessels shifted and fell causing Mr. Freeman to plunge into the water between the two vessels, where he sustained serious injuries. Based on the testimony adduced to date, it appears that the unsecured gangway fell away from the barge and dumped the Claimant into the water between the two vessels.

**Law and Argument**

Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

> understand the evidence or to determine a fact in issue;(b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and(d) the expert has reliably applied the principles and methods to the facts of the case.[1]

In *Daubert v. Merrell Dow Pharmaceuticals*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[2] The Court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[3] The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[4] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[5] Second, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence, in other words, whether it is relevant.[6]

**<u>No Expert Opinions are Required to Understand the Simple Facts of this Accident</u>**

Finders of fact "are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn."[7] Accordingly, the Fifth Circuit has explained that, as a general rule, "[e]xpert testimony is not needed in many

---

[1] Fed. R. Evid. 702.
[2] 509 U.S. 579, 589 (1993). See also *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) (clarifying that Daubert gatekeeping function applies to all forms of expert testimony).
[3] See *Moore v. Ashland Chemical Inc*., 151 F.3d 269, 276 (5th Cir.1998).
[4] See *Daubert,* 509 U.S. at 589.
[5] See *Id*. at 590.
[6] See *Id*. at 591.
[7] See *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 419 (5th Cir. 2012) (internal quotation marks and citation omitted).

if not most cases."[8] Moreover, although expert testimony may be "necessary in a professional negligence case to establish the standard of care for the industry," an exception applies in "instances of negligence that are a matter of common knowledge comprehensible to laymen."[9]

Mr. Fazioli's testimony will not be helpful to the Court, because he offers no opinions that require specialized knowledge to comprehend the simple facts of this case. The advisory notes to Rule 702 state that "whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier of fact.[10] In *Peters v. Five Star Marine Service,* the Fifth Circuit expressly recognized that where "the jury could adeptly assess this situation using only their common experience and knowledge[,] [e]xpert testimony [is] unnecessary, and thus the decision to exclude the testimony [is] within the discretion of the trial judge."[11] Based upon this principle, Courts routinely exclude "expert" testimony that does not offer any expertise or other technical or superior knowledge outside of the common knowledge and understanding of a judge or jury.[12]

Marc Fazioli is a maritime industry worker who claims he has past experience as a Master, Officer, and Deckhand on vessels similar in size and function to M/V Olivia Rae. He also claims he has been retained by vessel and longshoring industry clients to evaluate operations and advise regarding safety and regulatory compliance issues.[13] In the present matter, Mr. Freeman was injured when the unsecured gangway between the M/V Olivia Rae and Barge USLLA I slipped and caused Mr. Freeman to fall. The Court will be asked to determine what

[8] *Id.*
[9] See *In re Fabbro*, 411 B.R. 407, 425 n.54 (Bankr. D. Utah 2009).
[10] See Federal Rule of Evidence 702, Advisory Committee Notes.
[11] See *Peters*, 898 F.2nd 448, 450 (5th Cir. 1990).
[12] See *Jones v. H.W.C. Ltd.*, 2003 WL 42146 (E.D. La. 2003)(Claimant allegedly slipped in oil, Claimant 's expert excluded because their reports "intrude upon the domain of common sense matters upon which jurors require no expert assistance")
[13] See Expert Report of Marc A. Fazioli attached hereto as Exhibit "A" at page 3.

factors caused Mr. Freeman to fall and what factors caused the gangway to shift at the time of the incident as it relates to liability. Given the simplicity of the facts at hand, specialized knowledge or expert testimony regarding safety and regulatory compliance is not needed for these determinations. Nevertheless, Mr. Fazioli wishes to submit his own subjective opinions based on his common-sense application of walking forces and gravity to conclude that it is more likely that "Mr. Freeman **may have** lost his balance and fallen overboard from Barge USLLA I, while rushing to re-join his colleagues, and transiting along the deck of Barge USLLA I . . ."[14] This is simply speculation and does not apply any specialized knowledge.

In *Matherne v. MISR Shipping Company*, Plaintiff was injured when he fell on the deck while boarding the vessel.[15] Defendant alleged that the gangway was properly secured and argued that the sole cause of the incident was Plaintiff's failure to utilize reasonable care.[16] Defendant intended to call an expert witness regarding the conditions surrounding the incident. Ultimately, this Honorable Court ruled that **"[s]cientific, technical or specialized testimony would not assist the factfinder in reaching a decision on the vessel's liability in a routine 'fall on a vessel' case such as this one and would offer little more than argument**."[17]

Similarly, in *Araujo v. Treasure Chest Casino, LLC*, the Plaintiff's expert witness sought to introduce expert testimony detailing the defendant's failure to provide proper supervision and safety equipment.[18] In *Araujo*, Plaintiff was injured in when he fell from a ladder while working on defendant's vessel. This Court excluded that testimony and concluded that those opinions are "unhelpful because their opinions relate[d] to issues within the common knowledge, experience,

---

[14] Expert Report of Marc A. Fazioli
[15] See *Matherne v. MISR Shipping Company*, 1991 WL 99426 (E.D. La 1991)
[16] *Id.*
[17] *Id.* See *Eymard v. Pan-American World Airways*, 795 F.2d 1230, 1233 (5th Cir. 1986); *Scott v. Sears, Roebuck & Co.,* 789 F.2d 1052, 1055 (4th Cir. 1986).
[18] *Araujo v. Treasure Chest Casino, LLC*, 1999 WL 219771, (E.D. La. 1999).

and understanding of the lay juror."[19] This Court reasoned that defendant's expert "**would bring to the jury no more than the lawyers can offer in argument and through presentation of fact witnesses**."[20]

Finally, in *Howard v. Cal Dive Intern., Inc.,* this Court granted Plaintiff's Motion to Strike defendant's expert liability analysis testimony.[21] In *Howard*, Plaintiff was injured when he slipped and fell on a series of mats while working as a cook on defendant's vessel.[22] Defendant retained a maritime liability expert to assess the liability and safety concerns surrounding the incident.[23] Analogizing the facts of this case to *Matherne*, the Court found that "no expertise is required to assess the safety conditions on a vessel during a routine slip and fall accident."[24] Freeman's injuries were sustained as the result of a routine "fall on a vessel" and does not require specialized scientific or technical knowledge for a lay juror to comprehend. Neither Claimant Leon Freeman nor co-petitioners and claimants R360 and U.S. Liquids of Louisiana have retained a liability expert to opine on this accident. As such, expert testimony is unnecessary and Mr. Fazioli's testimony should be excluded.

**Marc Fazioli Does Not Utilize Verifiable Methodology in His Expert Report and Instead Relies on Unsupported Speculation**

Mr. Fazioli renders multiple presumptive opinions regarding the accident throughout his report which are outside the scope of his expertise in safety and regulatory compliance issues. Mr. Fazioli purports in his report that the gangway at issue could not have shifted as described by Mr. Freeman as it "does not appear consistent with expected principles of forces."[25] The report

---

[19] *Araujo v. Treasure Chest Casino, LLC*, 1999 WL 219771, (E.D. La. 1999), at *2.
[20] *Id.*
[21] *Howard v. Cal Dive Intern., Inc.*, 2011 WL 63873 (E.D. La. 2011)
[22] *Id*. at *1
[23] *Id.*
[24] *Id*. at *4
[25] See Exhibit "A" at page 8.

alleges that there was no apparent physical movement of M/V Olivia Rae and Barge USLLA I that would cause the vessels to separate from each other. Mr. Fazioli has not inspected the Olivia Rae, the barge USLLA I, or even the gangway at issue. He did not survey, weigh, or measure the scene of the accident or the instrumentalities involved, and he did not perform any sort of testing on the surfaces of the vessel, barge or any of the equipment surfaces involved in this incident. As a result, Mr. Fazioli's "expert opinions" are nothing more than unsupported conjecture.

Mr. Fazioli attempts to mask his unsupported conjecture by using PortVision historical Automatic identification systems (AIS) database information to allegedly determine that no vessel was recorded passing M/V Olivia Rae between 1915 and 2015 hours.[26] Based on this one piece of incomplete alleged evidence alone, he speculates that it is highly unlikely that Barge USLLA I and M/V Olivia Rae separated from each other in a way that would cause the gangway to shift.[27] This is the only potential "expert" opinion rendered by Mr. Fazioli, but it is so unreliable that its has essentially no value to the court.

Mr. Fazioli's opinion regarding the potential movement of the vessels does not account for other external factors that could have caused the vessels to shift. His report makes no mention of the wind, weather and tidal conditions at the time of the incident, and he does not consider the effect those factors could have on the moored vessels. The report stunningly fails to account for the fact that not all vessels are required to utilize an AIS system, as such a system is only required on vessels of particular size and vessel service.[28] Specifically, a vessel shall be equipped and operate an AIS when at least 65 feet in overall length or, if a towing vessel, more than 26

[26] *Id.* at Page 5
[27] *Id.*
[28] 46 U.S.C.A. § 70114

feet in overall length and 600 horsepower.[29] If a smaller vessel not required to utilize an AIS passed the M/V Olivia Rae and Barge USLLA I at any time relevant to Freeman's incident, it would not have shown up on the PortVision historical AIS historical database. Vessel Petitioners' expert fails to consider any of the above factors and assumes, without evidence or justification, that it was highly unlikely the two vessels shifted.

After assuming the vessels could not have shifted from any outside force, without any support, he concludes that the only way the gangway could have shifted would "be related to forces imparted by Mr. Freeman himself."[30] No scientific evidence, methodology, or industry standards are utilized in reaching this subjective assumption and/or conclusion. Despite not measuring any "restrictive frictions" of the gangway, vessel or barge or in combination with one another, Mr. Fazioli incredibly surmises that "the undersigned cannot identify any longitudinal force imparted to the gangway that would overcome the restrictive friction force created by Mr. Freeman own full body weight acting on the barge end of the gangway, combined with the overall length of the gangway resting on the steel deck edge."[31] Mr. Fazioli then concludes that if the gangway had shifted in the manner described by Mr. Freeman, it would have resulted in Mr. Freeman falling in an inboard direction on Barge USLLA I towards the hopper coaming, not outboard towards the deck edge between the two vessels.[32] Once again, no further information or analysis is provided as to how this conclusion was reached or what scientific method was utilized by him which could be accurately reproduce by anyone, and Mr. Fazioli essentially provides only an interpretation of facts and circumstances according to himself. Mr. Fazioli did not perform any testing, scientific analysis, expert accident recreation, or apply any accident

[29] 46 U.S.C.A. § 70114
[30] See Exhibit "A" at page 5.
[31] *Id.*
[32] *Id.* at Page 8.

reconstruction skills to support his conclusion, and he provides no basis for rejecting the testimony of the Claimant .

Relying on his prior assumptions, Mr. Fazioli ultimately concludes that "it is much more likely that Mr. Freeman may have lost his balance and fallen overboard from Barge USLLA I, while rushing to re-join his colleagues."[33] Effectively, Mr. Fazioli offers unsupported conclusions about causation, but fails to provide to provide any reliable methodology to analyze them. These pseudo-scientific opinions are the worst kind of junk science, and they should not be allowed passed the *Daubert* threshold. While the Vessel Petitioners will undoubtedly argue that this is a bench trial and Mr. Fazioli can be subjected to vigorous cross examination, the *Daubert* inquiry is intended to limit junk opinions like Mr. Fazioli's from ever entering the courtroom.

**Marc Fazioli's Expert Testimony Supplants the Role of the Judge by Reaching Ultimate Conclusions of Law**

Mr. Fazioli's opinions and conclusions stated in his report also involve legal conclusions and attempts to resolve ultimate factual determinations reserved for the fact finder, in this case, the Judge. The court recognized in *Jacobs v. Northern King Shipping Co., LTD*, that blanket legal conclusions are inappropriate subject matter for expert testimony.[34] The Fifth Circuit has held that experts should be precluded from offering legal opinions.[35] Mr. Fazioli is doing just this in coming to the conclusion that "the alleged incident, if it occurred as testified by Mr. Freeman, could have been avoided by actions and decisions of Mr. Freeman alone."[36] Mr. Fazioli attempts to justify this legal conclusion by stating that, per 29 CFR Part 1915, Mr. Freeman and his employer "were specifically required to observe and determine the safety and suitability of the

[33] See Exhibit "A" at page 5.
[34] *Jacobs*, 1998 WL 28234 (E.D.La)
[35] *Estate of Sowell v. U.S.,* 198 F.3d 169, 171 (5th Cir. 1999) ("It is not for the expert witness to tell the trier of fact what to decide")
[36] See Exhibit "A" at page 9.

deployed gangway during the evening of 28th February 2019, with respect to use by HydroChemPSC employees."[37] The existence and scope of Mr. Freeman's duties and responsibilities owed with regard to the subject gangway are inadmissible. That Mr. Freeman allegedly owed an inspection of the gangway and allegedly failed to uphold this duty falls squarely within the realm of legal conclusion and ultimate factual determinations and should be disallowed by this Court.

**Conclusion**

Claimant Leon Freeman requests that this Honorable Court grant this Motion in Limine to exclude Marc Fazioli's testimony. Marc Fazioli may be qualified to testify about offshore work in some other case; however, his testimony in this matter is not needed and is unsupported by any reliable methodology. Moreover, Mr. Fazioli's opinions are unreliable because they are incomplete, rely on unsupported speculations, and/or simply echo common-sense legal argument for which expert testimony is unnecessary. Accordingly, Claimant urges the Court to exclude Mr. Fazioli's testimony from the trial of this matter.

Respectfully submitted,

**COSSICH, SUMICH, PARSIOLA & TAYLOR, L.L.C.**

**BY:** /s/ *Andrew J. Cvitanovic*
**PHILIP F. COSSICH, JR., #1788 (T.A.)**
**DARREN D. SUMICH, #23321**
**BRANDON J. TAYLOR, #27662**
**ANDREW J. CVITANOVIC #34500**
**NATALIE M. MORRIS, #38096**
**DAVID A. PARSIOLA, #21005**
8397 Highway 23, Suite 100
Belle Chasse, Louisiana 70037
Telephone: (504) 394-9000
Facsimile: (504) 394-9110

[37] *Id.* at page 8.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of February, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

________________________________